654 A.2d 510

IN THE MATTER OF FRANK R. LAUTENBERG, KEVIN M. CO-
VERT AND THE BURLINGTON COUNTY DEMOCRATIC COM-
MITTEE, PLAINTIFFS, v. EDWARD A. KELLY, JR., BURLING-
TON COUNTY CLERK, DEFENDANT.

Superior Court of New Jersey
Law Division
Burlington County

Decided October 12, 1994.

*Steven D. Weinstein,* for plaintiff (*Blank, Rome, Comisky & McCauley,* attorneys).

*John E. Harrington,* for plaintiffs Kevin M. Covert and The Burlington County Democratic Committee.

*Stephen J. Mushinski,* for defendant, Edward A. Kelly, Jr., Burlington County Clerk.

WELLS, A.J.S.C.

This is an action by plaintiffs, United States Senator Frank Lautenberg (hereinafter, "Lautenberg"), a candidate for the Democratic nomination for the office of United States Senator, Kevin Covert, Chairman of the Burlington County Democratic Committee (hereinafter, "Covert"), and the Burlington County Democratic Committee (hereinafter, "Democratic Committee") against Edward Kelly, Burlington County Clerk (hereinafter, "Clerk Kelly") seeking to restrain Clerk Kelly from printing the ballot for the June 7, 1994 Primary Election, to declare *N.J.S.A.* 19:23–26.1 unconstitutional as violative of the First and Fourteenth Amendments of the United States and New Jersey Constitutions, and to direct Clerk Kelly to allow Lautenberg's name to be placed in the same column as the other Democratic candidates endorsed by the Democratic Committee on the June 7, 1994 Primary Election ballot.

Lautenberg, the incumbent United States Senator from New Jersey whose term expires in January 1995, filed a petition with the New Jersey Secretary of State, pursuant to *N.J.S.A.* 19:23–6, to run for re-election in the Democratic Primary Election scheduled for June 7, 1994. On April 11, 1994, Lautenberg wrote to Covert seeking permission from the Democratic Committee to use

the organization's slogan, "Regular Democratic Organization," and to have his name included in the column with other candidates endorsed by the Democratic Committee on the June 7, 1994 primary ballot.[1] On April 14, 1994, Covert wrote to Clerk Kelly and requested that Lautenberg's name be bracketed with and listed in the same column as the other Democratic candidates in Burlington County. Clerk Kelly, by letter dated April 15, 1994, advised Covert that such bracketing was not permitted pursuant to *N.J.S.A.* 19:23–26.1.

On April 18, 1994, an Order to Show Cause was signed by this court temporarily enjoining Clerk Kelly from printing the Primary Election Ballot for the June 7, 1994 Primary Election.[2] On April 25, 1994, after hearing argument, this court dissolved the restraints and ordered Clerk Kelly to print the Primary Election Ballot for the June 7, 1994 Primary Election, listing Lautenberg's name and slogan in the same column with the other Burlington County Democratic candidates endorsed by the Democratic Committee. Because this relief was not final as to the constitutionality of *N.J.S.A.* 19:23–26.1, the court ordered the parties to file cross-motions for summary judgment on this issue. Briefs were filed and argument heard.

Plaintiffs argue, relying on *Eu v. San Francisco Cty. Democratic Central Committee,* 489 *U.S.* 214, 109 *S.Ct.* 1013, 103 *L.Ed.*2d 271 (1989), that *N.J.S.A.* 19:23–26.1 impermissibly bur-

---

[1] Covert, as the duly elected Chairman of the Burlington County Democratic Committee, is authorized to designate, consent to, or otherwise approve the placement of names within the "Regular Democratic Organization" column on the ballot. *See N.J.S.A.* 19:23–17, –18, and *N.J.S.A.* 19:49–2.

[2] A drawing for the order in which the candidates for U.S. Senate would appear in the first column took place on April 21, 1994. The candidates were drawn in the following order:

Frank R. Lautenberg, Regular Democratic Organization
Bill Campbell, Regular Democrat Restore America's Manufacturing Leadership
Lynne A. Speed, LaRouche was Right!

dens their rights of free speech and association as guaranteed by the First and Fourteenth Amendments to the United States and New Jersey Constitutions. Plaintiffs assert that a political party nominates those candidates it feels best exemplifies its ideology and that the ability to communicate to the voters which candidates have the party endorsement is "critical" to both of these First Amendment rights. The "ultimate endorsement" of a political party, argue plaintiffs, occurs when the endorsed candidate is included in the official column of the party. Thus, the ability to send out the message "vote column X" to the voters, according to plaintiffs, facilitates communication of their views and association as guaranteed by the First Amendment.

Plaintiffs also argue that because there is no compelling state interest in how the candidates for a political party are bracketed, it cannot survive constitutional scrutiny. Plaintiffs assert that the state interest set forth in the statute's history is clarity of the ballot. Plaintiffs argue that the United States Supreme Court has held in *Eu* that protecting primary voters from confusion by restrictions in ballot organization via endorsement is unconstitutional. *Id.* at 228, 109 *S.Ct.* at 1023. Plaintiffs also note that there is no history which suggests that any ballot confusion existed prior to the enactment of this statute. According to plaintiffs, the clearest form of the ballot allows the endorsed candidate in each county to be listed in the party column.

Neither Clerk Kelly nor the State Attorney General took a position as to the constitutionality of *N.J.S.A.* 19:23–26.1.

In New Jersey, any endorsed candidate may request that a particular designation or slogan be printed above his or her name on the primary ticket to distinguish that candidate as belonging to a particular faction or wing of his or her political party. *N.J.S.A.* 19:23–17. In addition, several candidates may request that their names be grouped together in the same column with a common designation or slogan being printed with their names on the primary ticket. *N.J.S.A.* 19:23–18. The position of the candidates' names who have requested such grouping on the primary

ballot is governed by *N.J.S.A.* 19:49–2, which provides in pertinent part:

> For the primary election for the general election in all counties where voting machines are or shall be used, all candidates who shall file a joint petition with the county clerk of their respective county and who shall choose the same designation or slogan shall be drawn for position on the ballot as a unit and shall have their names placed on the same line of the voting machine.

Thus, candidates filing joint petitions with the County Clerk who have a common designation or slogan are required to be placed in the same column on the ballot. *See also Farrington v. Falcey,* 96 *N.J.Super.* 409, 233 *A.*2d 185 (App.Div.1967). Notwithstanding the aforementioned statutory process, the New Jersey Legislature, in 1981, enacted *N.J.S.A.* 19:23–26.1, which governs the placement of names on the primary ballot for candidates running for the offices of United States Senator or Governor. *N.J.S.A.* 19:23–26.1, entitled "Primary election for U.S. Senate and Governorship; placement of names on ballot," provides the following:

> In the case of a primary election for the nomination of a candidate for office of the United States Senator and in the case of a primary election for the nomination of a candidate for the office of Governor, the names of all candidates for the office of United States Senator or Governor shall be printed on the official primary ballot in the first column or horizontal row designated for the party of those candidates. In the event that the nomination of candidates for both offices shall occur at the same primary election, the names of all candidates for the office of United States Senator shall be printed in the first column or horizontal row designated for the party of those candidates, and the names of all candidates for the office of Governor shall be printed in the second column or horizontal row.
>
> No candidate for nomination for any other office shall have his name printed in the same column or horizontal row as the candidates for nomination for the office of United States Senator or Governor.

Thus, unlike candidates who file a joint petition, the names of candidates running for the office of United States Senator or Governor are required to be placed in the first column of the ballot and are prohibited from having their names grouped or bracketed with the other candidates endorsed by a political party. The purpose of this provision, according to its legislative history, was to "simplify the task of any person wishing to vote for a candidate for Governor or Senator, since he would not, as now,

have to read all lines of the ballot for the names of the various candidates." *Statement, Assembly No. 2023,* September 29, 1980.[3]

██ To assess the constitutionality of a state election law, the court must:

[F]irst examine whether it burdens rights protected by the First and Fourteenth Amendments. If the challenged law burdens the rights of political parties and their members, it can survive constitutional scrutiny only if the State shows that it advances a compelling state interest and is narrowly tailored to serve that interest.

[*Eu, Supra,* 489 *U.S.* at 222, 109 *S.Ct.* at 1019 (citing *Tashjian v. Republican Party of Connecticut,* 479 *U.S.* 208, 107 *S.Ct.* 544, 93 *L.Ed.*2d 514 (1986)).]

In this case, plaintiffs assert that their rights of free speech and association are burdened by *N.J.S.A.* 19:23–26.1. They argue that this statutory provision, which prohibits bracketing and only permits candidates for United States Senator or Governor to be placed in the first column on the ballot, prevents a candidate from being placed in the official party column on the primary ballot. Plaintiffs assert that this ban burdens their First Amendment rights because they are prohibited from including a candidate in an official party column which, according to plaintiffs, is the ultimate form of endorsement given by a political party.

██ I agree. The political desirability of bracketing candidates names together on the primary ballot has been judicially recognized by the courts in New Jersey. As noted by the Appellate Division, in *Harrison v. Jones,* 44 *N.J.Super.* 456, 130 *A.*2d 887 (App.Div.1957), "groups of candidates having the same party faction label or designation and desiring to have this fact brought to the attention of the voter in a primary election with the additional effectiveness produced by alignment of their names on the machine ballot should have the right to do so." *Id.* at 461, 130 *A.*2d 887. The United States Supreme Court has also recognized that barring political parties from endorsing candidates burdens

---

[3] Prior to 1981, gubernatorial and United States Senator candidates were routinely included in a column with affiliated candidates. *See e.g. Alaimo v. Burdge,* 63 *N.J.* 574, 575, 310 *A.*2d 730 (1973).

their First Amendment rights. As the Supreme Court stated in *Eu:*

> Barring political parties from endorsing and opposing candidates not only burdens their freedom of speech but also infringes upon their freedom of association. It is well settled that partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments. Freedom of association means not only that an individual voter has the right to associate with the political party of her choice, but also that a political party has a right to "'identify the people who constitute the association,'" and to select a "standard bearer who best represents the party's ideologies and preferences."
>
> [489 *U.S.* at 224, 109 *S.Ct.* at 1020 (citations omitted).]

Moreover, banning a candidate from associating with and advancing the views of a political party on the ballot is clearly a restraint on the right of association. *Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley,* 454 *U.S.* 290, 296, 102 *S.Ct.* 434, 437, 70 *L.Ed.*2d 492 (1981). In my opinion, this statutory provision burdens plaintiffs' rights to free speech and association.

Thus, this statutory provision will only survive constitutional scrutiny if it serves a compelling state interest. *Eu, Supra,* 489 *U.S.* at 225, 109 *S.Ct.* at 1021. The only compelling state interest set forth in the statute's legislative history is simplifying the voting process for those persons wishing to vote for candidates running for the offices of United States Senator or Governor. This state interest is very similar to that set forth in the *Eu* case, where the State of California indicated that the reason for its ban on party endorsements and statements of opposition was "to protect primary voters from confusion and undue influence." *Id.* at 228, 109 S.Ct. at 1022. In rejecting this reason as compelling, the United States Supreme Court noted that a "State's claim that it is enhancing the ability of its citizenry to make wise decisions by restricting the flow of information to them must be viewed with some skepticism." *Id.* (citing *Tashjian, supra,* 479 *U.S.* 208, 221, 107 *S.Ct.* 544, 552, 93 *L.Ed.*2d 514 (1986)). Likewise, I find that simplifying the voting process for those wishing to vote for candidates running for United States Senator or Governor is simply not a compelling state interest. In addition, neither the State of New Jersey nor Clerk Kelly has set forth any other

"compelling state interest" which would support the constitutionality of this statutory provision. Thus, because the prohibition on grouping candidates for United States Senator and Governor in the same column with other candidates endorsed by the political party burdens plaintiffs' rights of free speech and association while serving no compelling state interest, I hold that *N.J.S.A.* 19:23–26.1 violates the First and Fourteenth Amendments to the United States and New Jersey Constitutions.

I further hold that the entire statute must fall. If the prohibition against bracketing contained in the last paragraph of 26.1 falls, then the first and second paragraphs make no sense, so inextricably intertwined are they in the bracketing prohibition. Preserving the favored first column ballot position for gubernatorial or senatorial candidates is not possible to the extent that candidates for those offices are bracketed with candidates for other offices. In the first place such party tickets are subject to a draw for ballot position under *N.J.S.A.* 19:49–2; and secondly, of course, there is only one first column ballot position for which to draw. The court recognizes that this ruling disadvantages those candidates for Governor and United States Senate who may choose to run alone or whose requests to be bracketed with local offices has been rejected by local party officials; but, those candidates will be included in the draw and have as much chance for the favored first ballot position as other candidates, including those who choose to run with a ticket. While that is not, surely, as good as a guaranteed first ballot position under *N.J.S.A.* 19:23–26.1, the court is satisfied that the disadvantage is clearly not outweighed by the First Amendment considerations which mandates the statute fall in the first place.

For the reasons stated in *N.J.S.A.* 19:23–26.1 and *N.J.S.A.* 23:26.2 are hereby declared unconstitutional, void and of no further force or effect.